IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BEATRICE K.,[1]                              3:19-cv-01363-BR

       Plaintiff,                        OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

LISA R. J. PORTER
Johnston Porter Law Office, PC
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 245-6309

       Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SHATA STUCKY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2909

  Attorneys for Defendant

**BROWN, Senior Judge.**

  Plaintiff Beatrice K. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

  For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

  Plaintiff filed an application for DIB on August 14, 2014, alleging a disability onset date of January 7, 2014. Tr. 251.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on November 15,

---

  [1] Citations to the official transcript of record filed by the Commissioner on January 22, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

2016.  Tr. 57-86.  Plaintiff was represented at the hearing.
Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on January 31, 2017, in which he
found Plaintiff was not disabled and, therefore, was not entitled
to benefits.  Tr. 111-34.

On June 21, 2018, the Appeals Council issued an Order in
which it noted the ALJ erred at Step Four when he found Plaintiff
was capable of performing her past relevant work as a business
systems analyst.  Specifically, the Appeals Council noted the ALJ
found Plaintiff's "severe impairments limited her to less than
the full range of sedentary work" based on the VE's testimony
that Plaintiff's past relevant work "fit[] into the sedentary
category as it was actually performed by [Plaintiff]."  Tr. 137.
The Appeals Council's review of the record,

> however, . . . confirm[ed] [Plaintiff] indicated
> she lifted and carried up to 20 pounds
> occasionally and stood up to six hours in an
> eight-hour workday, which is inconsistent with the
> VE's testimony that she actually performed her
> past work at the sedentary level.  The decision
> offered no rationale reconciling this discrepancy.
> As articulated, the decision's step 4 denial is
> not supported.

Tr. 137.  The Appeals Council, therefore, remanded the matter to
the ALJ to re-evaluate the record, to "[g]ive further
consideration to [Plaintiff's] maximum residual functional
capacity," and to "[g]ive further consideration to whether
[Plaintiff] . . . can perform" her past relevant work.  Tr. 138.

The ALJ held a hearing on remand on November 27, 2018. Tr. 35-56.  Plaintiff was represented by an attorney at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on February 27, 2019, in which he found Plaintiff was not disabled before her December 31, 2017, date last insured and, therefore, is not entitled to benefits. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on June 27, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-5. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on January 2, 1964; was 52 years old at the time of the first hearing; and was 54 years old at the time of the hearing on remand.  Tr. 251.  Plaintiff has a GED. Tr. 293.  Plaintiff has past relevant work experience as a systems analyst.  Tr. 27.

Plaintiff alleges disability during the relevant period due to pain in her hip, neck, and shoulder; arthritis; "pain and numbness in arm, hand and fingers"; issues with her trigger finger; back injury; and depression.  Tr. 88.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 18-19, 22-25.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of

evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## <u>DISABILITY ANALYSIS</u>

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete

incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also*
*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.*
*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in
substantial gainful activity from her January 7, 2014, alleged
onset date through her December 31, 2017, date last insured.

Tr. 17.

At Step Two the ALJ found Plaintiff had the severe
impairments during the relevant period of "degenerative disc
disease status post cervical fusion," osteoarthritis of the
knees, diabetes, carpal-tunnel syndrome, and obesity.  Tr. 18.
The ALJ found Plaintiff's impairments of sleep apnea, migraine
headaches, abdominal bloating, anxiety, and depression were not
severe during the relevant period.  Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found
Plaintiff had the RFC during the relevant period to perform
sedentary work with the following limitations:

> stand and walk 2 hours total of 8, and sit up to 6
> hours of 8; push and pull as much as able to lift
> and carry; handle and finger frequently
> bilaterally; frequently climb ramps and stairs;
> occasionally climb ladders, ropes, and scaffolds;
> occasionally stoop and crawl; frequently crouch
> and kneel.

Tr. 21.

At Step Four the ALJ found Plaintiff could perform her past
work during the relevant period.  Tr. 27.  Accordingly, the ALJ
concluded Plaintiff was not disabled from her January 7, 2014,
alleged onset date through her December 31, 2017, date last
insured.  Tr. 27.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statement of Plaintiff's sister, Leona K.; (3) failed at Step Two to address Plaintiff's degenerative joint disease of the right hip; (4) found at Step Two that Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS were not severe; (5) partially rejected "medical opinion evidence"; and (6) failed at Step Three to account for Plaintiff's degenerative joint disease of the right hip in his assessment of Plaintiff's RFC.

**I.   The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom

10 - OPINION AND ORDER

she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing on November 15, 2016, that she was not able to walk more than "a block or two . . . with a lot of rest" because of pain in her hip, back, and knees. Plaintiff could walk half a block without resting. Plaintiff often uses a cane when she walks, but she "do[es not] always use it because it makes [her] hands hurt too much." Tr. 78. Plaintiff noted she could stand for five or ten minutes with "a

lot of fidgeting because . . . just standing straight is hard on
everything," particularly her lower back and right hip.  Tr. 65.
Plaintiff stated she was unable to sit "in one spot" for longer
than 30 minutes due to pain in her hip and back.  When she does
"sit for that long, getting up will be far more difficult than it
would be if [she] sat for about 15 minutes. . . .  [T]he longer
[she] stay[s] in one position, the more it becomes immobile and
the more pain it'll cause when [she] . . . start[s] moving it."
Tr. 74.  Plaintiff stated she has had "knee and hip injections"
that relieved her pain for "maybe a month at most."  Tr. 75.
Plaintiff testified she needs a right-hip replacement, but her
doctor "wants [her] to lose about 30 pounds" before she has the
surgery.  Tr. 74.  Plaintiff also stated she has pain and
numbness in her hands.  Plaintiff underwent surgery for carpal-
tunnel syndrome in her right hand, but she did not receive relief
from her symptoms.  Plaintiff uses a wrist brace on her right
hand "four or five time a week."  Tr. 62.  When Plaintiff tries
to use a computer, it makes both of her hands hurt.  When
Plaintiff types or moves a computer mouse for two or three
minutes, she begins to experience pain in her hands.  Plaintiff
noted she has problems lifting and manipulating things because
her grip is weak and her "sensation of touch has lessened."
Tr. 66.  Specifically, the middle finger on her right hand is
"always numb and then the other fingers will start going numb."

Tr. 76.  Plaintiff stated she has problems with memory and
concentration as well as anxiety "being out in public."  Tr. 69.
Plaintiff also testified she has been "sleeping in a lot," and,
therefore, sometimes she does not get out of bed until noon or
1:00 p.m.  On a typical day Plaintiff takes care of her dog, eats
something easy to make, and checks her email "quickly" because
"holding [her tablet] in her hands hurts."  Tr. 67.  Plaintiff
plays with her dog "a little bit," reads, watches television, and
lies down.  Five or six times a day Plaintiff has to lie face-
down for 15 minutes to an hour to stretch out her hips.
Plaintiff does not do household chores due to pain in her hips,
knees, and back.  For example, vacuuming strains her hips, back,
knees, and hands and stooping to take clothing from the washer to
the dryer causes her to suffer pain in her hip and back.
Plaintiff also has trouble with her daily grooming because
reaching her feet causes her to experience hip pain and to have
balance issues.

    Plaintiff testified she did not believe she would be able to
do her past work as a systems analyst because, as noted, using a
computer mouse or keyboard for more than two or three minutes
causes her hands to hurt.  In addition, she cannot sit, stand, or
walk in combination for eight hours.

    Plaintiff testified at the hearing on November 29, 2018,
that her "pain levels have become worse" since the November 2016

13 - OPINION AND ORDER

hearing.  For example, it is difficult for Plaintiff to drive to doctor appointments, and she is in pain constantly.  Plaintiff stated her back "is just absolutely killing" her, and walking is difficult because using a cane makes her hands hurt.  Plaintiff noted she tried to do physical therapy and to walk, but she can walk only ten or fifteen minutes before she has to stop due to pain in her hip and back.  Plaintiff stated she has arthritis in both of her hands, and her doctors have told her that there is not anything they can do.  Plaintiff also has had more knee pain since the November 2016 hearing, and her doctors are recommending knee-replacement surgery after she has hip surgery.  Plaintiff testified she lost 40 pounds after her date last insured, and, therefore, her doctors have begun procedures to schedule her for hip-replacement surgery.  Plaintiff also noted her IBS "reared up its ugly head several times," and she has urinary incontinence. Tr. 50.  As a result, Plaintiff needs to use the bathroom every hour.  The ALJ inquired about Plaintiff's "breaks in service from [her] doctors" from November 2016 through April 2017 and July 2017 through July 2018.  Plaintiff testified she cancelled doctor appointments occasionally during those periods because it was "difficult to go" due to her pain levels and anxiety.  Tr. 42. In addition, there were several months in which Plaintiff did not see her orthopedic surgeon because

> all they were doing is . . . checking [her] weight
> and . . . [she] kn[ew] [she] hadn't hit any of the

14 - OPINION AND ORDER

> [weight targets] that would have made it better,
> so [she] thought . . . why am I going and put
> myself through the pain of driving to Portland
> . . . when I know it's just going to be another
> checkup and the injections they give me for pain
> don't really help.

Tr. 43.  There was also a period when Plaintiff's "IBS got so bad
[she] couldn't . . . leave [the house] because [she did not] know
when it would come on and [she did not] want to be in public when
[she] los[t] control."  Tr. 43.  Plaintiff stated she did not
believe she would be able to do her previous job as a systems
analyst because she cannot use a computer "that long" without
pain in her hands, hip, and back; she cannot drive long enough to
get to work; and she has difficulty learning new things.  Tr. 52.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms" during the relevant period, but Plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[her] symptoms are not entirely consistent with the medical
evidence and other evidence in the record."  Tr. 22.
Specifically, the ALJ stated Plaintiff "began taking walks and
going to the gym"; she "has shown the ability to handle household
chores, and to care for her sister's dog (e.g., feeding, bathing,
going for walks)"; and she also "shops, . . . pays bills, and
. . . uses the computer" in spite of her "musculoskeletal pain."
Tr. 22.  The record, however, reflects Plaintiff was unsuccessful
in her efforts to walk and to go to the gym.  In addition, x-rays

15 - OPINION AND ORDER

of Plaintiff's right hip taken in June 2016 reflect "[s]evere right hip medial osteoarthritis . . . with superomedial and medial hip joint space narrowing." Tr. 978. Sandra Schmahmann, M.D., radiologist, concluded in June 2016 that Plaintiff had "[p]rogressive severe right hip and mild left hip degenerative joint disease." Tr. 978. Similarly, x-rays of Plaintiff's knees at that time reflected "[s]evere medial and mild parellofemoral compartment degenerative joint disease and tricompartmental spurs" on her left knee and "[m]oderate medial and mild patellofemoral degenerative joint disease with tricompartmental spurs" on her right knee. Tr. 982. In September 2016 Kathryn Schabel, M.D., treating physician, stated Plaintiff had "[l]imitations of activities of daily living from hip degeneration include severe limitation in ability to walk, climb stairs, [and] shop." Tr. 1118. Dr. Schabel noted Plaintiff tried physical therapy, and her "symptoms . . . progressed in spite of good effort" and "[i]njections [are] contraindicated due to short-term efficacy in severe hip degeneration." Tr. 1118. Dr. Schabel concluded:

> Hip replacement surgery is . . . indicated because this patient has failed thorough trials of conservative management. Given the severity of the patient's condition and debilitating pain, continued nonsurgical management will not result in meaningful pain relief and will only serve increase the risk of falls, deconditioning, and severely limit the patient's daily activities. Patient is a good candidate for total hip arthroplasty.

Tr. 1118-19.  In October 2016 Robert Mangrum, PA-C, treating
physician assistant, noted x-rays of Plaintiff's knees showed
"narrowed medial compartment bilat[erally], with bone on bone L
knee medially, decreased patellofemoral space, tricompartmental
spurring" and indicated a diagnosis of "bilateral knee advanced,
end-stage osteoarthritis."  Tr. 1123.  In November 2016
Plaintiff's treating physical therapist noted Plaintiff was
unable "to bear [her] full weight during dry-land gait" due to
"joint compressive forces" on her hip and knees.  Tr. 1109.
A May 2017 x-ray of Plaintiff's lumbar spine reflected severe
disc degeneration at L5-S1.  Tr. 1291.  July 2017 x-rays of
Plaintiff's knees reflected "severe medial and moderate
patellofemoral compartment degenerative joint disease" of the
left knee and "moderate to severe medial and moderate
patellofemoral compartment degenerative joint disease" of the
right knee.  Tr. 1703.  July 2017 x-rays of Plaintiff's hips
reflected "unchanged severe right and mild left hip degenerative
joint disease."  Tr. 1711.

In addition, in May 2017 Kelly Dunbar, treating Occupational
Therapist, noted Plaintiff had decreased range of motion,
strength, and sensation in her hands and wrist, "which impacts
[her] functional independence."  Tr. 1617.  In July 2017 Duncan
Ramsey, M.D., treating physician, noted Plaintiff's hand and
wrist "symptoms and exam do not seem to correlate with recurrent

17 - OPINION AND ORDER

carpal tunnel syndrome nor any other compressive syndrome.  Her normal EMG supports an etiology besides these, as well." Tr. 1736.  Dr. Ramsey, indicated her hand and wrist issues are "more likely due to her known diabetes."  Tr. 1736.

The Court concludes on this record that the ALJ erred when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

## II.  The ALJ erred when he partially rejected the lay-witness statement of Plaintiff's sister, Leona K.

Plaintiff alleges the ALJ erred when he gave only "partial weight" to the Third-Party Function Report of Plaintiff's sister, Leona K.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

18 - OPINION AND ORDER

On September 14, 2014, Leona K. completed a Third-Party Function Report in which she stated Plaintiff suffers symptoms and limitations similar to those set out by Plaintiff in her testimony. Specifically, she stated Plaintiff cannot work because she suffers pain when she sits, stands, and walks and she cannot work at computer all day. Tr. 255. Plaintiff has trouble putting on clothing below the waist including shoes and socks, trouble "sitting down or getting up from [the] toilet," and can only walk for half a block before she needs to rest. Plaintiff can make simple meals, do light housework, shop in stores and by computer, read books, watch television, read email, go to movies "1x month," eat out "about 1x week," and play with her dog daily. Tr. 325-27.

The ALJ gave partial weight to Leona K.'s statement. As noted, Leona K.'s report is substantially similar to Plaintiff's testimony. The Court has already concluded the ALJ erred when he partially rejected Plaintiff's testimony because the ALJ failed to provide support for his opinion based on substantial evidence in the record. The Court also concludes on the same basis that the ALJ erred when he partially rejected Leona K.'s statement.

**III. The ALJ erred in part at Step Two.**

Plaintiff alleges the ALJ erred at Step Two when he found Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS were not severe impairments during the

19 - OPINION AND ORDER

relevant period and when he failed to address Plaintiff's

degenerative disc disease of the hip.

At Step Two the claimant is not disabled if the Commissioner

determines the claimant does not have any medically severe

impairment or combination of impairments. *Stout v. Comm'r Soc.

Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20

C.F.R. § 416.920(a)(4)(ii); *Keyser v. Comm'r of Soc. Sec. Admin.,*

648 F.3d 721, 724 (9th Cir. 2011). A severe impairment

"significantly limits" a claimant's "physical or mental ability

to do basic work activities." 20 C.F.R. §§ 416.921(a), (b).

Such abilities and aptitudes include walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying, handling, seeing,

hearing, and speaking; understanding, carrying out, and

remembering simple instructions; using judgment; responding

appropriately to supervision, co-workers, and usual work

situations; and dealing with changes in a routine work setting.

*Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if
> it is a slight abnormality which has such a minimal
> effect on the individual that it would not be expected
> to interfere with the individual's ability to work
> . . . . [T]he severity regulation is to do no more
> than allow the Secretary to deny benefits summarily to
> those applicants with impairments of a minimal nature
> which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

The "step-two inquiry " is 'a *de minimis* screening device to

20 - OPINION AND ORDER

dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

**A.    The ALJ did not err when he found at Step Two that Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS were not severe impairment**s.

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two if the ALJ considered the impairments when formulating his assessment of Plaintiff's RFC. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor). *See also Buck v. Berryhill*, No. 14-35976, 2017 WL 3862450, at *5 (9th Cir. 2017) ("[S]tep two was decided in [the plaintiff's] favor after both hearings.  He could not possibly have been prejudiced.  Any alleged error is therefore harmless and cannot be the basis for a remand.")(citation omitted).

As noted, the ALJ resolved Step Two in Plaintiff's favor.  In addition, the ALJ considered Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS, and he found the record did not indicate Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS were severe impairments during the relevant period.

The Court, therefore, concludes on this record that the ALJ did not err when he failed to find at Step Two that Plaintiff's neuropathy symptoms of the hands, urinary incontinence, and IBS were severe impairments during the relevant period.

**B.    The ALJ erred when he failed to address Plaintiff's hip impairment at Step Two.**

Plaintiff points out that the ALJ did not specifically assess Plaintiff's hip impairment at Step Two.  At most, he may have included it as one of Plaintiff's unspecified impairments when he found at Step Two that "other symptoms and complaints appear in the medical treatment records periodically but there is nothing to show that they are more than transient or cause significant vocational limitations.  Any such impairment is not a severe medically determinable impairment because no objective acceptable medical documentation supports such a finding." Tr. 18.  Although the ALJ specifically found Plaintiff's knee osteoarthritis, diabetes, obesity, carpal-tunnel syndrome, and degenerative disc disease of the spine did not meet or equal Listings, he did not reference Plaintiff's hip impairment.  To the extent that the ALJ concluded Plaintiff's hip impairment was a "transient" symptom or did not "cause significant vocational limitations," the Court finds those conclusions are not supported by the record.  As noted, several treating medical providers found Plaintiff's degenerative joint disease of the hip to be

22 - OPINION AND ORDER

severe and that Plaintiff would require hip-replacement surgery
as soon as Plaintiff lost sufficient weight for such a surgery to
be successful.  In addition, the record contains numerous x-rays
taken throughout the relevant period that reflect severe
degenerative disease in Plaintiff's hips.  Thus, the record
reflects Plaintiff's hip impairment is more than minimal, and,
therefore, the ALJ's determination that Plaintiff's hip
impairment did not pass the "*de minimis* screening device to
dispose of groundless claims" at Step Two is not supported by
substantial evidence in the record.  *See Edlund*, 253 F.3d at 1158
(quoting *Smolen*, 80 F.3d at 1290).

        Accordingly, on this record the Court concludes the ALJ
erred at Step Two when he either failed to consider Plaintiff's
hip impairment or considered Plaintiff's hip impairment and found
it was not severe during the relevant period.

## IV.  The ALJ did not err when he did not specifically address the individual treatment notes of Dr. Schabel and Paolo Punsalan, M.D.

Plaintiff alleges the ALJ erred when he rejected the
opinions of Drs. Schabel and Punsalan related to Plaintiff's
ability to sit, to stand, and to walk.  As Defendant points out,
however, the items Plaintiff refers to as opinions are, in fact,
treatment notes, and ALJs are not required to address individual
treatment notes.  *See, e.g., Valentine v. Comm'r*, 574 F.3d 685,
691-92 (9th Cir. 2009)("Dr. Storzbach's observation about 'highly

routinized, overlearned tasks with low cognitive demand' is neither a diagnosis nor a statement of Valentine's functional capacity.  It is rather a recommended way for Valentine to cope with his PTSD symptoms.  The ALJ therefore did not err by excluding it from the RFC."); *Kenwyn B. v. Comm'r, Soc. Sec. Admin.*, No. 1:19-CV-01128-BR, 2020 WL 1812831, at *6 (D. Or. Apr. 9, 2020)("Dr. Grant's chart treatment notes are recommendations rather than a medical opinion, and, as such, the ALJ was not required to address or to include them in his analysis."); *Young v. Saul*, No. 19-CV-01965-PJH, 2020 WL 3506805, at *17 (N.D. Cal. June 29, 2020)("Because Drs. Phillips and Boutelle's reports were treatment notes, the ALJ was not required to specifically address their reports . . . .  Thus, the ALJ did not err by failing to specifically address Drs. Phillips and Boutelle's treatment notes.").

The Court, therefore, concludes the ALJ did not err when he did not address the individual treatment notes of Drs. Schabel and Punsalan.

**V.    The ALJ erred at Step Three.**

Plaintiff asserts the ALJ erred at Step Three when he failed to include all of Plaintiff's limitations in his assessment of Plaintiff's RFC.  As noted, however, the ALJ found Plaintiff could sit up to six hours in an eight-hour day; could "frequently climb ramps and stairs . . . crouch and kneel"; and could

"occasionally stoop and crawl . . . and climb ladders, ropes, and scaffolds." Tr. 21.  Plaintiff points out that the ALJ failed to include limitations in his assessment of Plaintiff's RFC that result from Plaintiff's hip impairment such as her inability to sit for more than 30 minutes and to climb, to stoop, to crawl, to crouch, or to kneel for any amount of time.

The Court has already concluded the ALJ erred when he failed to consider Plaintiff's hip impairment or considered Plaintiff's hip impairment and found it to be nonsevere during the relevant period.  Thus, the ALJ erred when he failed to include any of Plaintiff's limitations in his assessment of Plaintiff's RFC that might have resulted from Plaintiff's hip impairment.

In summary, the Court concludes the ALJ erred when he partially rejected Plaintiff's testimony, partially rejected Leona K.'s lay-witness statement, failed to find Plaintiff's hip impairment is severe, and failed to include in his assessment of Plaintiff's RFC all of Plaintiff's limitations relating to her hip impairment that are set out in her testimony, set out in Leona K.'s lay-witness statement, and supported by the medical record.


### **REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely

utility of further proceedings. *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

Here further administrative proceedings are necessary for the ALJ to formulate an assessment of Plaintiff's RFC that includes Plaintiff's limitations related to her hip impairment and to determine whether Plaintiff was disabled during the relevant period.  Accordingly, the Court remands this matter to the Commissioner for further administrative proceedings.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 9th day of September, 2020.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge